UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00280-FDW-SCR

| | |
|---|---|
| MARINA TIKHONOVA, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| SOUTHEASTERN GYMNASTICS and MICHAEL TRESKE, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' Motion for to Dismiss, (Doc. No. 7). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court issued a notice (Doc. No. 9) to Plaintiff, who appears *pro se*, advising her of the burden she carries in responding to Defendants' motion. This matter has been fully briefed, (Doc. Nos. 8, 11, 12), and is ripe for ruling. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and, to the extent this Court construes the motion as a Motion for Summary Judgment, Defendants' Motion for Summary Judgment is **DENIED**.

**I.  BACKGROUND**

Plaintiff Marina Tikhonova, age fifty-nine, is an athletic trainer who has dedicated over a decade to "training children and adolescents in gymnastics, diving, and swimming, both domestically and internationally." (Doc. No. 1, p. 7.) Plaintiff began working for Defendant Michael Treske ("Treske"), the owner of Southeastern Gymnastics, Inc. ("SEG"), as a trainer and gymnastics coach on November 1, 2019. (Id.)

During the summer seasons, Plaintiff claims her hours were reduced "under the pretext of insufficient work, despite later discovering that younger workers were hired for the same period."

1

(Id.) Then, even after the summer term, Plaintiff alleges being allocated significantly fewer hours compared to the younger coworkers. (Doc. No. 1, p. 7–8.) Ultimately, while on preapproved vacation, Defendant Treske emailed Plaintiff informing her of staffing changes resulting in the loss of all Plaintiff's assigned hours. (Doc. No. 1-1, p. 3.) In the email, Defendant Treske cited a "need to increase experience for some of [his] younger Coaches." (Id.)

On March 19, 2023, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging Defendant SEG discriminated against Plaintiff based on her age. (Doc. No. 1-1, p. 1.) Specifically, the EEOC charge cites the email Defendant Treske sent Plaintiff stating younger coaches needed more experience. (Id.) In response to the charge, Defendant SEG submitted a position statement to the EEOC denying Plaintiff's allegations. (Doc. No. 8, p. 4.) Defendant SEG participated in the subsequent EEOC investigations.[1] (Id.)

On March 6, 2024, Plaintiff filed the Complaint in the instant case alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), including termination of Plaintiff's employment based on age. (Doc. No. 1, p. 3–4.)

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a complaint may be dismissed for failure to state a claim upon which relief can be granted.[2] A Rule 12(b)(6) inquiry is limited to determining if the pleader's allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter,

---

[1] The Court notes the EEOC investigation appears to remain ongoing.
[2] "When considering a motion to dismiss involving *pro se* parties, the court construes the pleadings liberally to ensure that valid claims do not fail merely for lack of legal specificity." Brown v. Charlotte Rentals LLC, No. 3:15-cv-0043-FDW-DCK, 2015 WL 4557368, at *2 (W.D.N.C. July 28, 2015) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). At the same time, however, the Court should not "assume the role of advocate for the pro se plaintiff." Gordon, 574 F.2d at 1151 (quotation omitted).

accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists only when the factual content allows a court to draw the "reasonable inference" that the defendant is liable for the misconduct. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

If matters outside of the pleadings are presented in connection with a Rule 12(b)(6) motion and are not excluded by the court, the motion must be treated as a motion for summary judgment pursuant to Rule 56. See Fed. R. Civ. P. 12(d). Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. E D O Corp., 710 F.3d 209, 213 (4th Cir. 2013). In making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249–50. In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." Id. at 252.

## III. ANALYSIS

The Court finds Defendants have not shown good cause warranting a preliminary hearing on the motion to dismiss. Because there is a sufficient basis in the briefs for this Court to rule, the Court DENIES the request for a hearing. The Court will address the parties' arguments in turn.

### A. Defendant Michael Treske

Defendant Treske argues any ADEA claim against him should be dismissed because that act does not create individual liability. Under well-settled precedent, this Court lacks subject matter jurisdiction over Defendant Treske in his individual capacity because ADEA claims do not permit individual liability for employment discrimination. See Jones v. Sternheimer, 387 Fed. App'x 366, 368 (4th Cir. 2010) ("To the extent that the finding applied to Jones's claims under Title II, the ADA, and the ADEA, the district court was correct, as these statutes do not provide for causes of action against defendants in their individual capacities.") (citations omitted); Lane v. Lucent Tech.,

4

Inc., 388 F.Supp.2d 590, 594 (M.D.N.C. 2005). Accordingly, Plaintiff's ADEA claim against Defendant Treske must be dismissed for lack of subject matter jurisdiction.

**B.     Defendant Southeastern Gymnastics**

  1. <u>Exhaustion of Administrative Remedies</u>

Defendant SEG argues, because Plaintiff has not pursued all claims of discrimination with the EEOC, she has not exhausted her administrative remedies. Specifically, Defendant SEG claims Plaintiff's EEOC charge was limited in scope to the email sent by Defendant Treske. Thus, Defendant SEG asserts this Court lacks subject matter jurisdiction.[3]

For purposes of this matter, the allegations contained in the charge of discrimination determine and limit the scope of any subsequent judicial complaint. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009). Importantly, civil suits may not present entirely new factual bases or entirely new theories of liability from those set forth in the initial EEOC complaint. See <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 963–64 (4th Cir. 1996) (concluding a plaintiff was barred from litigating a sexual harassment claim where her EEOC charge included only a claim for failure to promote based on gender); <u>Lawson v. Burlington Indus., Inc.</u>, 683 F.2d 862, 863–64 (4th Cir.1982) (finding when a plaintiff had alleged only a discriminatory layoff claim in his EEOC complaint, the court

---

[3] The Court notes the ongoing investigation by the EEOC and Plaintiff's lack of a right-to-sue letter do not bar this matter from proceeding. ADEA plaintiffs must file a timely EEOC charge but need not wait for a right-to-sue letter from the EEOC before filing an ADEA lawsuit in court. Instead, an ADEA plaintiff must wait 60 days after filing a timely EEOC charge alleging age discrimination and then may file a lawsuit in federal court, which this Plaintiff has done. 29 U.S.C. § 626(d)(1); <u>Compare</u> 29 U.S.C. § 626 ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed . . .") <u>with</u> 42 U.S.C. § 2000e-5(f)(1) (indicating that the Commission "shall so notify the person aggrieved" if the charge is dismissed or the Commission has not filed a civil action within 180 days, and "within ninety days after the giving of such notice a civil action may be brought").

5

lacked jurisdiction over his discriminatory failure-to-rehire claim). Thus, where a plaintiff's "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit," there is no subject matter jurisdiction. Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005).

Here, Plaintiff's EEOC charge alleges discrimination based on age citing the email Defendant Treske sent informing Plaintiff of her termination due to a "need to increase experience for some of [Defendants'] younger [c]oaches." Plaintiff's Complaint also alleges termination based on her age. However, Plaintiff includes "additional instances of discriminatory actions". Namely, a period during the summer where Plaintiff did not receive her usual hours "under the pretext of insufficient work, despite later discovering that younger workers were hired for the same period" and a period in the fall where Plaintiff was allocated "significantly fewer hours compared to younger workers." (Doc. No. 1, p. 7–8.) While the Complaint is slightly broader in scope than the EEOC charge, this is not a case of Plaintiff attempting to surprise Defendant SEG with allegations of other forms of discrimination.[4] Rather, Plaintiff's Complaint alleges the same discriminatory conduct by the same actor starting a few months prior to her termination when Plaintiff first noticed her hours being limited through her ultimate termination where her hours were cut entirely. Thus, the additional discriminatory claims are reasonably related to the original complaint.[5]

    2.    <u>Twenty or More Employees</u>

---

[4] The Court notes Defendant's EEOC response states, "During the summer months, the hours worked by part-time coaches are usually reduced, as there is less demand for Rec classes during summer." (Doc. No. 11-3, p. 3.) Despite Defendant now arguing Plaintiff's additional allegations of reduction in hours beginning in the summer do not naturally flow from the termination email, Defendant seemingly anticipated the allegation enough to preemptively include a rationale for the reduction in Defendant's initial response to the EEOC.

[5] While the Court understands Defendant SEG's contention that the additional discriminatory instances may not have arisen in the EEOC investigation, the Court at this time has not been provided with any evidence of that. Drawing all reasonable inferences in the light most favorable to Plaintiff, all conduct alleged in the Complaint is reasonably related and flows from the EEOC charge.

6

Defendant SEG argues Plaintiff's age discrimination claims against it must be dismissed because they employed fewer than twenty workers during the relevant period. As an initial matter, Defendant SEG contends Plaintiff failed to plead Defendant SEG employed twenty or more employees as required. However, attached to Plaintiff's Complaint was a copy of her EEOC charge which indicates a range for the number of employees employed by Defendant SEG. Therefore, the Court finds the range sufficient to allow for an inference Defendant satisfies the employee numerosity requirement for purposes of the pleading requirements.

For age discrimination in employment, the term "employer" is expressly defined as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). The Fourth Circuit has recognized, "[d]etermining who is an 'employee' under the Act, however, is an involved question." Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981 (4th Cir. 1983). The ADEA defines "employee" as "an individual employed by any employer." 29 U.S.C. § 630(f). Courts have adopted a test "called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." Walters v. Metropolitan Ed. Enter., Inc., 519 U.S. 202, 206 (1997). However, an individual's appearance on the employer's payroll is not necessarily dispositive, as "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law would not count" toward the minimum threshold of employees. Id. at 211. Therefore, in addition to the payroll method, the Court must consider principles of control and common law agency when determining whether a particular individual is an "employee". See, e.g., Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440 (2003).

As it relates to this matter, the Court must look to the number of employees employed at the time of the alleged discrimination, as well as the preceding calendar year.[6] Thus, the years 2022 and 2023 provide the basis for Plaintiff's ADEA claims, and the Court must determine the number of employees Defendant SEG had during those years to assess whether Plaintiff can establish Defendant SEG is an "employer" under the ADEA.

In accordance with the payroll method, Defendant SEG has provided pay records for the years 2022 and 2023. For the year 2022, the records reflect Defendant SEG paid wages to a total of thirty-nine individuals. For the year 2023, the records reflect Defendant SEG paid wages to a total of thirty-eight individuals. Both of these numbers exceed the requisite twenty employees to qualify as an employer under the ADEA. However, Defendant SEG asserts the records further show not all of these individuals worked the required twenty weeks in a given year to qualify as employees and Defendant SEG argues four specific employees—despite meeting the twenty-week requirement—do not come within sufficient control to constitute employees of SEG. Setting aside the four contested employees, Defendant SEG contends only nineteen individuals paid wages in 2022 and in 2023 qualify as employees. After an independent review of the payroll records, not yet considering the contested employees, the Court agrees there is no material dispute of fact that nineteen individuals paid waged by SEG in both 2022 and 2023 respectively qualify as employees. The Court will consider each of the additional four contested employees in turn.

    i.    *Mitzi Treske*

---

[6] Plaintiff highlights Defendant's response submitted during the ongoing EEOC investigation in which Defendant stated "SEG currently employed 8 full-time coaches for the Team program and 15–18 part-time coaches for the Rec program. Mike Treske and Kathy Hatt are SEG's only administrative staff, bringing the total number of SEG employees to 25–28." (Doc. No. 11-3, p. 3.) While the Court understands Plaintiff's frustration with the discrepancy between Defendant's EEOC response and their present Motion, responses during the course of an EEOC investigation do not resolve issues with finality. Rather, the responses are "merely preparatory to further proceedings." Georator Corp. v. EEOC, 592 F.2d 765, 768 (4th Cir. 1979). Therefore, the Court will conduct an independent review regarding the number of employees.

Despite receiving regular compensation throughout both 2022 and 2023, Defendant SEG argues Mitizi Treke should not be considered an employee for purposes of establishing the employee numerosity requirement. Plaintiff disagrees.

In Clackamas, the Supreme Court adopted from the EEOC Compliance Manual a non-exhaustive, six-factor test to determine whether a shareholder-director of a corporation is an employee for purposes of Title VII. 538 U.S. at 449–50. The six factors include:

> 1. Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
> 2. Whether and, if so, to what extent the organization supervises the individual's work;
> 3. Whether the individual reports to someone higher in the organization;
> 4. Whether and, if so, to what extent the individual is able to influence the organization;
> 5. Whether the parties intended that the individual by an employee, as expressed in written agreements or contracts; and
> 6. Whether the individual shares in the profits, losses, and liabilities of the organization.

Id. The test focuses on the "common-law touchstone of control" assessing whether an individual "is subject to the organization's control" or "whether the individual acts independently and participates in managing the organization." Id. "No one factor [is] decisive;" all aspects of the individual's relationship with the organization must be considered. Id. at 451 (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992)). The Clackamas test has been applied to individuals with ownership interests outside the context of shareholder-directors of a professional corporation. See Solon v. Kaplan, 398 F.3d 629, 632–33 (7th Cir. 2005) (stating Clackamas "is not limited to the narrow question of whether a share-holder director is an employee" and noting the six factors "provide guidance in resolving the more general issue of whether an individual is an employee" or an employer); Walls v. Avpro, Inc., No. JFM-04-3042, 2005 WL 855931, at *2 n.1 (D. Md. Apr. 14, 2005) (citing Solon for the principle the Clackamas test can be used to

determine whether certain individuals are owners or employees beyond the context of a professional corporation), aff'd 162 F. App'x 252 (4th Cir. 2006).

In her submitted affidavit, Mitzi Treske, wife to Defendant Treske, states she is a 50 percent owner of SEG and has been since she and Defendant Treske jointly purchased SEG from its former owners in 2003. (Doc. No. 12-1, p. 2.) Between 2003 and Spring 2021, Ms. Treske was "principally responsible for oversight of SEG, having hired Managerial staff to operate the business day to day." (Id.) Since Spring 2021, Ms. Treske has transitioned much of the managerial duties and responsibility for day-to-day management and operations to Defendant Treske. (Id.) Since August 2022, Ms. Treske "ceased to have any further direct participation in any of SEG's day-to-day affairs" and only participates in SEG to the extent Ms. Treske consults on "strategic discussions". (Doc. No. 12-1, p. 3.) Additionally, in Defendant Treske's affidavit he attests Defendant SEG has no authority to fire Ms. Treske, set conditions on her work, or supervise her. (Doc. No. 8-2, p. 3.) Ms. Treske also shares in Defendant SEG's profits, losses, and liabilities. (Id.)

Based on the evidence, all six Clackamas factors weigh in favor of finding Ms. Treske was an owner, not an employee of Defendant SEG in the years 2022 and 2023. Ms. Treske (1) could not be hired or fired by SEG; (2) was not supervised by SEG; (3) did not report to anyone higher up in SEG; (4) had significant influence over SEG; (5) lacked an employment contract with SEG; and (6) shared in the profits, losses, and liabilities of SEG. Accordingly, the Court finds Ms. Teske was not an employee of Defendant SEG in 2022 and 2023 for purposes of establishing the threshold number of employees necessary for Defendant SEG to be deemed an employer under the ADEA.

  *ii.* *Daniel Carter*

Despite receiving regular compensation throughout both 2022 and 2023, Defendant SEG argues Daniel Carter should not be considered an employee for purposes of establishing the employee numerosity requirement because he is an independent contractor. Plaintiff disagrees.

"[W]hether an individual is an employee in the ADEA context is properly determined by analyzing the facts of 'economic realities' test first announced in Bartles v. Birmingham, 332 U.S. 126 (1947)." Garrett, 721 F.2d at 981. The proper method for determining the meaning of "employee" in an ADEA suit is by combining the "economic realities" test and the common law right-of-control test. Id. at 981–82. Thus, courts are instructed to focus on the control the employer exercises over the alleged employee, and the eleven other factors:

> (1) the kind of occupation . . . (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment . . . (6) the manner in which the work relationship is terminated . . . (7) whether annual leave is afforded; (8) whether the work is an integral art of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Id. at 982 (citations omitted); see also Butler v. Drive Automotive Industries of Am., Inc., 793 F.3d 404, 413–14 (4th Cir. 2015). "Control is the most important factor to be considered, but it is not dispositive." Garrett, 721 F.2d at 982.

Here, Mr. Carter "electronically submits the hours of each SEG employee to a payroll service provider, ADP." (Doc. No. 8, p. 10.) While payroll is certainly an important part of operating a business, it is not an integral part of Defendant SEG's business as a gymnastics facility for children. Mr. Carter performs these payroll services unsupervised by Defendant SEG using his own equipment and off SEG premises. (Id., p. 10–11; Doc. No. 8-2, p. 4.).) He has worked for Defendant SEG for over ten years and while it is clear to the Court that Mr. Carter is not paid hourly, the Court cannot discern from the earning reports how Mr. Carter is paid. The only way

11

Case 3:24-cv-00280-FDW-SCR    Document 13    Filed 09/05/24    Page 11 of 16

the Court can describe it is variable. (Doc. Nos. 8-3, p. 5–6; 8-5, p. 6.) Furthermore, Mr. Carter is afforded no annual level or benefits. Although, Defendant SEG does pay half of Mr. Carter's social security taxes. (Doc. No. 8, p. 13.) Importantly, the parties seem to have intended Mr. Carter be an independent contractor. Mr. Carter is son-in-law to the owners of Defendant SEG and maintains full-time employment at LPL Financial while assisting with the payroll needs at SEG. (Id.) In all, the Garrett factors support finding Mr. Carter is an independent contractor and thus is not counted as an employee for the ADEA numerosity requirement.

### iii. Suzanna Begin and Sarah Carter

Defendant SEG further argues neither Suzanna Begin nor Sarah Carter should be considered an employee for purposes of establishing the employee numerosity requirement because, despite being on SEG's payroll, they perform services for an equestrian center owned and operated by the same owners of Defendant SEG. Plaintiff argues "[g]iven that they are all members of the same family, it would be difficult for an outsider to understand all the combinations and manipulations involving Form W-2 [and] . . . no one can determine or verify the extent of these individuals' participation in and control over the business." (Doc. No. 11, p. 5.) The Court will construe Plaintiff's argument as alleging Defendant SEG and the equestrian center are "joint employers" or, in the alternative, SEG and the equestrian center constitute a single employer.

The Fourth Circuit articulated certain factors courts should consider in determining whether an individual is jointly employed by two or more entities. These factors are derived from a hybrid test used to resolve analogous but legally distinct employee status issues in Title VII cases, see Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 219 (4th Cir. 1993); see also Garrett v. Phillips Mills. Inc., 721 F.2d 979, 981 (4th Cir. 1983) (applying hybrid test in

ADEA context), but have been tailored to "adequately capture the unique circumstances of joint employment" in this context. Butler, 793 F.3d at 414. The factors include:

> (1) authority to hire and fire the individual; (2) day-to-day supervision of the individual, including employee discipline; (3) whether the putative employer furnishes the equipment used and the place of work; (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; (5) the length of time during which the individual has worked for the putative employer; (6) whether the putative employer provides the individual with formal or informal training; (7) whether the individual's duties are akin to a regular employee's duties; (8) whether the individual is assigned solely to the putative employer; and (9) whether the individual and putative employer intended to enter into an employment relationship.

Id. None of the factors are dispositive, but the "common-law element of control remains the 'principal guidepost' in the analysis. Id. Additionally, the Fourth Circuit identified three factors as being the most important:

> The first factor, which entity or entities have the power to hire or fire the putative employee, is important to determining ultimate control. The second factor, to what extent the employee is supervised, is useful for determining the day-to-day, practical control of the employee. The third factor, where and how the work takes place, is valuable for determining how similar the work functions are compared to those of an ordinary employee.

Id. at 414–15.

Comparatively, under an integrated theory of employer liability, "several companies may be considered so interrelated that they constitute a single employer" for purposes of the ADEA. Hukill v. Auto Car, 192 F.3d 437, 442 (4th Cir. 1999), abrogated on other grounds by Arbaugh v. Y&H Corp., 546 U.S. 500 (2006). "There is well-established authority under this theory that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005) (citing Cook v. Arrowsmith Shelburne Inc., 69 F.3d 1235, 1240–41

13

(3d Cir. 1995)). The Fourth Circuit has articulated a non-exhaustive, four-prong test to determine whether two employers should be considered a single employer: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." Hukill, 192 F.3d at 442. No single factor is conclusive; however, "control of labor operations is the most critical factor." Id. (citing Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764 (5th Cir. 1997)) (recognizing that control of labor relations prong has traditionally been the most important).

Here, as previously stated, Defendant SEG contends both Ms. Begin and Ms. Carter provide services to the equestrian center and payment by SEG was not intended to create an employment relationship. However, there remain several disputes of material facts especially as to the Butler factors and Hukill factors outlined above, including those respectively cited by the Fourth Circuit as the most important. Therefore, at this time, summary judgment is not appropriate as it is unclear to the Court whether Ms. Begin and Ms. Carter constitute employees for purposes of the ADEA numerosity requirement.

3. Plausibility of Claims

Finally, Defendant SEG contends, even if it were to have the requisite number of employees to be deemed an employer under the ADEA, Plaintiff nevertheless has failed to state a plausible claim for relief.

To prevail on an ADEA claim, a plaintiff must prove by a preponderance of the evidence that age constituted the but-for cause of the adverse employment action. Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009). A plaintiff may rely on either direct evidence of discriminatory intent or indirect evidence established through the adapted inferential proof scheme announced by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See

Bonds v. Leavitt, 629 F.3d 369, 386 (4th Cir. 2011) (applying McDonnell Douglas to ADEA claims); Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996) (recognizing discriminatory intent based on age can be demonstrated by direct evidence). In either case, the plaintiff carries the ultimate burden of establishing that unlawful discrimination was the "but for" cause of his injury and that "age was the 'reason' that the employer decided to act." See Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 234 (4th Cir. 2016) (quoting Gross, 557 U.S. at 176). Importantly, "an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have [taken the adverse employment action] in the absence of age discrimination." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019) (citing Gross, 557 U.S. at 177).

While Defendant is correct that "general or ambiguous remarks referring to the process of generational change create no triable issue of age discrimination", Mereish v. Walker, 359 F.3d 330, 336–37 (4th Cir. 2004), that is not the case here. Different from the cases cited by Defendant SEG, there is evidence plead creating an inferential nexus between the comment SEG was seeking to "increase experience for some of [its] younger coaches" and Plaintiff's termination. Namely, the comment was made in the email informing Plaintiff of the complete reduction in her hours. Additionally, as the Court ruled earlier, the comment was plead in conjunction with a pattern of Plaintiff's hours being decreased and younger coaches' hours being increased in the months leading up to Plaintiff's termination. At this time, Defendant SEG does not appear to have offered a legitimate, non-discriminatory reason for termination. Accordingly, Plaintiff plead facts sufficient for a claim for violation of the ADEA.

### IV. CONCLUSION

This ruling is without prejudice to any arguments Defendant may assert in a dispositive motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 7), is **GRANTED IN PART** as to this Court's lack of subject matter jurisdiction over Defendant Treske, and **DENIED IN PART** as to Plaintiff's exhaustion of administrative remedies and failure to state a claim.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. No. 7), construed as a Motion for Summary Judgment as to the ADEA numerosity requirement, is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 5, 2024

Frank D. Whitney
United States District Judge

16
Case 3:24-cv-00280-FDW-SCR   Document 13   Filed 09/05/24   Page 16 of 16